# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| DANIEL J. HUNTER, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 4:16-CV-41-TLS |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Daniel J. Hunter seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied his Social Security Disability benefits and erred by (1) incorrectly determining that the Plaintiff's mental impairments did not meet or medically equal one of the relevant listings, (2) wrongly rejecting the medical opinion of a psychological expert, (3) failing to consider the Plaintiff's lower back pain as a severe impairment, (4) mischaracterizing and improperly weighing evidence, resulting in a flawed credibility determination, and (5) failing to present an adequate hypothetical question to the vocational expert.

## BACKGROUND

On April 14, 2014, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on April 13, 2013. (R. 17.) His claim was denied initially on June 24, 2014, and upon reconsideration on August 25, 2014. (*Id.*) On

February 18, 2015, an administrative law judge (ALJ) held a video hearing. (*Id.*) After obtaining medical interrogatories, the ALJ held a follow-up video hearing. (*Id.*) At the second hearing, Michael Cremerius, Ph.D., testified via telephone as an impartial medical expert, and Clifford Brady testified as a vocational expert. (*Id.*) On November 3, 2015, the ALJ denied the Plaintiff's application, finding he was not disabled as of the date of the decision. (R. 17–30.) On March 2, 2016, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review. (R. 1–3.)

On May 20, 2016, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

**THE ALJ'S FINDINGS**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA since his alleged onset date of April 13, 2013. (R. 19.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting his ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including post-traumatic stress disorder (PTSD), an affective disorder, and an anxiety disorder. (R. 19.) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work and that the impairments had lasted for at least twelve months as required under the statute. (R. 20.) The ALJ found that the Plaintiff's other alleged or diagnosed impairments, including mild lumbar degenerative disc disease/obese body habitus, gastroesophageal reflux disease (GERD), hyperlipidemia, hearing loss, and a sleeping disorder, were not severe impairments because they either did not significantly limit the Plaintiff's physical or mental ability to do basic, work-related activities and/or had not been diagnosed and therefore were not medically determinable. (*Id.*)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do physically, despite his limitations—to determine whether he can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that he had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> The claimant can understand, remember, and carryout simple and semi-skilled tasks. The claimant can maintain adequate attention and concentration for such tasks. The claimant can interact appropriately, but on a superficial basis, with co-workers and supervisor[s]. The claimant is further limited to occasional, brief and superficial contact with the general public. Lastly, the claimant can manage the changes involved in a routine work setting.

(R. 23.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of his alleged onset date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective symptoms and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 24.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (*Id.*) The Plaintiff testified that he suffered from "mood abnormalities, severe anxiety/panic/hypervigilance, and feelings of hopelessness," which impaired his ability to perform any work since April 2013. (*Id.*) He also testified that he "remains anxious, socially isolates himself, and suffers from severe sleep deprivation secondary to ongoing post-traumatic stress disorder like symptomology." (*Id.*) He also "reported mood instability, social anxiety, focus abnormalities, and affect restrictions, all of which have impacted his ability to function effectively outside the area of his home." (*Id.*)

The ALJ concluded that the Plaintiff's subjective testimony was not supported by the objective medical evidence or treatment records, and thus, the ALJ discounted the Plaintiff's subjective symptoms, finding the Plaintiff not credible. (R. 24–27.) The ALJ noted that often, the medical evaluators did not find evidence of the symptoms the Plaintiff communicated to them. In

4

other instances, the ALJ noted that the Plaintiff engaged in activities that were inconsistent with a disability, such as walking significant distances and going to the gym. The ALJ also looked to the Plaintiff's ability to engage in daily living activities and found that he could "attend to his personal hygiene, care for his children as a primary care giver throughout a normal week, attend school classes, complete household chores, manage his famil[y's] personal finances, drive and look for work." (R. 21.) Further, the ALJ noted that there were various compliance issues with the Plaintiff's medical regimen as well as unexplained gaps in treatment. Ultimately, the ALJ found that "his credibility was compromised by the inconsistencies addressed extensively above with regard to his functionality and the objective documentation by his treating and examining clinicians." (R. 27.)

Turning to the objective medical evidence, the ALJ discussed the weight given to various medical sources. The ALJ gave great weight to the State agency medical consultants' assessments, did not give great weight to testifying psychological evaluator Dr. Cremerius, and little weight to various assessments conducted by the Veterans Administration. (R. 28–29.)

The ALJ then considered whether the Plaintiff was capable of performing past relevant work. The Plaintiff has past relevant work in customer service, which the vocational expert advised was skilled employment. (R. 75.) Thus, the ALJ concluded that the Plaintiff was not capable of performing any past relevant work. (R. 29.) However, relying on the vocational expert's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R. 30.) Accordingly, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act from his alleged onset date to his date last insured. (*Id.*)

**STANDARD OF REVIEW**

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. The Court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address

every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The Court may not overturn the ALJ's credibility determination unless it is "patently wrong." *see Elder*, 529 F.3d at 413–14. "An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong." *Pinder v. Astrue*, No. 3:09-CV-363, 2010 WL 2243248, at *4 (N.D. Ind. June 1, 2010) (*citing Craft*, 539 F.3d at 678). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). However, "a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (citing *Terry*, 580 F.3d at 477); *Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003); *Salaiz v. Colvin*, 202 F. Supp. 3d 887, 893 (N.D. Ind. 2016). "The determination of credibility must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft*, 539 F.3d at 678.

## ANALYSIS

A.  **Non-Compliance With Treatment Regimens**

The Court is unable to meaningfully review the ALJ's credibility determination for multiple reasons. First, the Court "cannot assess the validity of the ALJ's credibility determination because the ALJ did not ask important questions to determine if" the Plaintiff's failure to obtain medical care was "justifiable." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).

"Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *see also Craft*, 539 F.3d at 679 ("The ALJ must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care."). This is so because "[t]here may be a reasonable explanation behind [the plaintiff's] actions, such as []he may not have been able to afford the treatment, further treatment would have been ineffective, or the treatment created intolerable side effects." *Murphy*, 759 F.3d at 816; *see also Shauger*, 675 F.3d at 696 ( finding that "good reasons" for failing to obtain treatment "may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects); *Frierson v. Colvin*, No. 2:14-CV-170, 2015 WL 5174058, at *6 (N.D. Ind. Sept. 2, 2015) (finding fault where "[t]he ALJ did not ask Plaintiff about his compliance with treatment, and the credibility section of his opinion does not address any reasons for noncompliance, such as inability to afford treatment") (citing *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006)). "[F]ailure to comply with treatment may be a sign of mental

disorder rather than a reason to discount its severity." *Fields v. Berryhill*, No. 2:16-CV-24, 2017 WL 1075120, at *3 (N.D. Ind. Mar. 21, 2017).

In fact, if an ALJ takes into consideration a claimant's failure to seek treatment in a credibility determination, the ALJ is required to inquire as to the reasons for such failure. *See Murphy*, 759 F.3d at 816 (finding fault where "the ALJ did not ask [the plaintiff] why she did not attend all of her physical therapy sessions, or why she did not comply with her home exercise program"); *Epting v. Colvin*, No. 2:18-CV-385, 2016 WL 1237888, at *8 (N.D. Ind. Mar. 29, 2016) ("When considering noncompliance with treatment . . . an ALJ is also required [to] make a determination about whether noncompliance with treatment is justified . . . ."); *Galloway v. Colvin*, No. 2:17-CV-24, 2015 WL 893172, at *5 (N.D. Ind. Mar. 3, 2015) (noting that "[h]ad the ALJ's opinion actually cited this fact as a reason for finding Plaintiff not credible, it would have been an error since he did not explore potential reasons why she wasn't treated that year" (citing *Shauger*, 675 F.3d at 696)); *Pitaroski v. Colvin*, No. 213-CV-112, 2014 WL 3687234, at *12 (N.D. Ind. July 24, 2014) (remanding because "the ALJ did not make the requisite inquiry to discover the reasons [the plaintiff] either failed to seek treatment . . . or to take his medications as prescribed"). An ALJ may not infer that a claimant "must have felt fine" during gaps in treatment without asking why the claimant received no treatment during those gaps. *Cole v. Colvin*, 831 F.3d 411, 415 (7th Cir. 2016).

An ALJ also cannot draw a negative inference based on a claimant's failure to obtain *adequate* treatment, even if he has sought some treatment during the relevant time period. *See Visinaiz v. Berryhill*, 243 F. Supp. 3d 1008, 1014 (N.D. Ind. 2017) (remanding where "the ALJ did not ask Plaintiff about her perceived failure to seek adequate treatment" when the Plaintiff's only treatment was through medication that provided "some benefit"); *Parker v. Colvin*, No.

9

2:15-CV-316, 2016 WL 4435622, at * 5 (N.D. Ind. Aug. 22, 2016) (remanding where "[t]he ALJ found Plaintiff less than credible in part because she did not attend as many physical therapy appointments as authorized by her insurance and was not participating in pain management or the types of pain medication the ALJ thought would be appropriate" without "ask[ing] Plaintiff about her physical therapy appointments or pain medication regime[n], and did not credit the pain medications Plaintiff did take").

In the instant case, the ALJ "found it perplexing and erosive to the claimant's allegation that he neither sought nor required any care between mid and late 2013, a period when he alleged that he was so disabled that he was incapable of working." (R. 25.) There is no indication that the ALJ made any inquiry as to the reason(s) the Plaintiff failed to seek care during these months despite the weight the ALJ appeared to give such omission. The ALJ also noted the Plaintiff's "failure to follow up with his post-traumatic stress disorder/mental health care" multiple times. (R. 25–27.) The ALJ did note that, at one of the Plaintiff's appointments, he stated that the reasons for some of his "no-shows" included "doing better" and a long drive, although it does not appear that the ALJ made any specific inquiry to the Plaintiff about whether these reasons were responsible for all of the instances of non-compliance or whether there were any other reasons that may have also contributed to his non-compliance. Therefore, to the extent that the ALJ's failure to consider the reasons for the Plaintiff's perceived lack of medical treatment affected the Plaintiff's credibility, the Court will remand this case.

**B.     Daily Living Activities**

The Plaintiff further argues that the ALJ placed undue weight on his ability to conduct daily living activities. The Seventh Circuit has emphasized that there are "critical differences

between activities of daily living and activities in a full-time job" including flexibility in scheduling, possible help from family members, and lack of minimum performance standards; and "[t]he failure to recognize these differences is a recurrent . . . feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). The Commissioner correctly notes that an individual's daily activities are among the factors that an ALJ must consider in making such a determination. *See Craft*, 539 F.3d at 660.

Here, the ALJ failed to consider the modifications and help that the Plaintiff required in order to complete the referenced daily activities. For example, the Plaintiff testified that his best friend, whom he sees every day, goes to the store for him, does chores around the house, and helps him to remember his VA appointments, doctors' appointments, and priorities throughout the week. (R. 62.) He testified that when he gets to see his twin children, that "[u]sually [his] best friend's there or, if not, the mother comes over too." (R. 65.) The Plaintiff receives help cooking and picking up after the children. (R. 66.) He testified that the VA appointed a caregiver for him who has his prescriptions filled, maintains his appointments, buys groceries, cooks, and cleans. (*Id.*) Thus, it appears that the ALJ "ignored [the Plaintiff's] qualifications as to *how* he carried out those activities." *Craft*, 539 F.3d at 680 (emphasis in original). Courts have repeatedly found fault with decisions where an ALJ noted that the claimant could perform daily activities but failed to examine the physical or mental consequences of performing those activities and/or the claimant's need for assistance or modifications. *See, e.g.*, *Sneed v. Berryhill*, No. 2:16-CV-195, 2017 WL 4325303, at *3 (N.D. Ind. Sept. 29, 2017) ("If the ALJ wishes to hold Plaintiff's daily activities against her, he must . . . discredit Plaintiff's claims of how much her children help with the activities."); *Herrold v. Colvin*, No. 2:13-CV-360, 2015 WL 1243293, at *6 (N.D. Ind. Mar.

11

17, 2015) ("[T]he Seventh Circuit has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of his personal hygiene, children, or household chores.") (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009)); *Blow v. Astrue*, No. 1:11-CV-293, 2012 WL 3233621, at *9 (N.D. Ind. Aug. 6, 2012) (finding improper reliance on daily activities when others performed almost all of the household chores and any activities the claimant could perform were at a slower pace with frequent breaks); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248–49 (6th Cir. 2007) (finding fault where the ALJ "fail[ed] to examine the physical effects coextensive with [the] performance" for daily activities and "failed to note or comment upon the fact that [the claimant] receive[d] assistance of many everyday activities and even personal care from her children").

To the extent that the ALJ based the credibility determination on the Plaintiff's ability to engage in daily living activities without taking into account the qualifications on the Plaintiff's ability to perform them, the Court remands this case to the ALJ.

## CONCLUSION

For the reasons stated above, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order. Because the Court is remanding on these issues, the Court need not consider the remainder of the parties' arguments.

SO ORDERED on December 4, 2017.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION